IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JESSE TRUJILLO,

    Plaintiff,

v.                                                                                         Civ. No. 4-635 MV/GBW

JOE WILLIAMS,
*Corrections Secretary*,
*New Mexico Correctional Department*,
*et al.*,

    Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on Defendants' Motion to Vacate or Modify September 30, 2011 Postage Plan Order (*doc. 163*) and the attendant briefing (*docs. 167*, *169*). Because Defendants have failed to satisfy the standards of Rule 60(b) and, in the alternative, because their motion is not timely filed under Rule 60(c), I RECOMMEND that the Court DENY Defendants' Motion.

### I. BACKGROUND

Plaintiff filed his initial Complaint in this case on June 4, 2004. *Doc. 1*. However, the relevant procedural history begins in 2011, when Plaintiff's only remaining claim was that he had been denied access to the courts. *Doc. 120* at 1. The Court adopted the Report and Recommendations of Magistrate Judge Schneider (*doc. 105*) in finding that

"charging [Plaintiff] for postage to send requests for legal materials violate[d] his access to the Courts." *Doc. 120* at 2. Unlike inmates housed in New Mexico, Plaintiff, who was (and still remains) incarcerated in Virginia pursuant to the Interstate Corrections Compact, had to pay postage in order to mail requests for legal materials or file grievances with the New Mexico Correctional Department ("NMCD"). *Id*. Accordingly, the Court ordered Defendants to develop a plan which would "enable Plaintiff to send requests for legal materials and grievances to the NMCD at no expense to himself." *Id*.

Defendants subsequently filed a Plan to Allow Postage Free Legal Request by Plaintiff to NMCD, proposing to provide Plaintiff with three standard business envelopes, stamped and addressed to NMCD, and to provide Plaintiff with a new stamped and pre-addressed envelope in any response or reply sent to Plaintiff. *Doc. 121*. The Court adopted this plan by Order on September 30, 2011. *Doc. 129*.

On August 4, 2016, Plaintiff moved to reopen the case and find Defendants in contempt of the Order Adopting Postage Plan. *Doc. 147*. The Court denied the motion to reopen the case, finding that Plaintiff had not made the necessary showing under Federal Rule of Civil Procedure 60(b). *Doc. 153* at 4. However, it granted Plaintiff's motion to enforce the September 30, 2011 Order. *Id*. at 5 ("The Court finds that

Defendants have not complied with the Court's September 30, 2011 Order[1] and will impose a civil-contempt sanction."). Defendants, rather than denying that they had failed to comply or claiming that compliance was impossible, instead argued that they should be relieved from compliance. *Id*. Defendants were directed to file a separate motion if they wished to be relieved. *Id*. at 6.

Defendants filed the instant Motion and now argue that the Order Adopting Postage Plan should be vacated because (1) changing conditions make compliance "progressively more onerous"; (2) unforeseen obstacles have arisen to compliance with the plan; (3) enforcement of the current plan is detrimental to the public interest; and (4) it is an "extraordinary circumstance relative to the ordinary course of prison administration, that poses an extreme and unexpected hardship." *Doc. 163* at 5–6. They urge the Court to vacate or modify the 2011 Postage Plan under Federal Rule of Civil Procedure 60(b)(5) or 60(b)(6). *Id*.

## II.    STANDARD OF REVIEW

The Court entered a Final Judgment in this case in 2011. *Doc. 130*. Defendants consequently request relief under Rule 60, which governs "Relief from a Judgment or Order." Fed. R. Civ. P. 60. Specifically, they argue that the Order should be vacated or

---

[1] The date as of which Defendants ceased complying with the 2011 Postage Plan has not been precisely established. However, Defendants admit that former Director Roark "informed Plaintiff that no more postage-free envelops [sic] would be provided." *Doc. 163* at 18. This statement by Director Roark is also referenced in Plaintiff's Motion to Reopen, filed on August 4, 2016. *Doc. 147* at 2. As of at least mid-2016, therefore, Defendants were openly refusing to comply with this Court's order.

modified under Rule 60(b)(5) or Rule 60(b)(6). *Doc. 163* at 5–6. Relief under Rule 60(b)(5) is properly granted where "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). Rule 60(b)(6) allows the Court to grant relief from a final judgment for, broadly, "any other reason that justifies relief." Fed R. Civ. P. 60(b)(6). Generally, relief under Rule 60(b) is "extraordinary and may only be granted in exceptional circumstances." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1009 (10th Cir. 2000) (internal quotation and citation omitted).

### A. Rule 60(b) Modification

A party seeking modification under Rule 60(b)(5) "bears the burden of showing that 'a significant change in either factual conditions or in law' warrants revision of the decree." *Jackson v. Los Lunas Cmty. Program*, 880 F.3d 1176, 1194 (10th Cir. 2018) (quoting *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992)). Changed factual circumstances may justify relief from a final judgment where (1) the changed circumstances make compliance "substantially more onerous," (2) "unforeseen obstacles" render the decree "unworkable," or (3) "enforcement of the decree without modification would be detrimental to the public interest." *Id*. (quoting *Rufo*, 502 U.S. at 384–85). Additionally, relief is "no longer equitable" where, owing to changed

4

circumstances, "ongoing enforcement of the original order" is no longer "supported by an ongoing violation of federal law." *Horne v. Flores*, 557 U.S. 433, 454 (2009).

Importantly, Rule 60(b)(5) does not allow parties simply to relitigate a closed case. It "may not be used to challenge the legal conclusions on which a prior judgment or order rests, but…provides a means by which a party can ask a court to modify or vacate a judgment or order if [there is] 'a significant change either in factual conditions or in law.'" *Id*. at 447 (quoting *Rufo*, 502 U.S. at 384). The moving party "need not show that a change in fact was both unforeseen and unforeseeable." *Jackson*, 880 F.3d at 1194 (citing *Rufo*, 502 U.S. at 385). However, the foreseeability of the change in factual conditions is not irrelevant:

> If it is clear that a party anticipated changing conditions that would make performance of the decree more onerous but nevertheless agreed to the decree, that party would have to satisfy a heavy burden to convince a court that it agreed to the decree in good faith, made a reasonable effort to comply with the decree, and should be relieved of the undertaking under Rule 60(b).

*Rufo*, 502 U.S. at 385. The burden is on the moving party to establish the existence of changed circumstances and show that they warrant relief. *Horne*, 557 U.S. at 447. Once it has met this burden, however, a district court abuses its discretion in denying the Rule 60(b) motion. *Id*.

Rule 60(b)(6), which permits the court to modify a final judgment for "any other reason that justifies relief," is "exclusive of the other enumerated subsections of Rule 60(b), 'is even more difficult to attain[,] and is appropriate only when it offends justice

5

to deny such relief.'" *Saggiani v. Strong*, 718 F. App'x 706, 712 (10th Cir. 2018) (unpublished) (quoting *Zurich N. Am. V. Matrix Serv., Inc.*, 426 F.3d 1281, 1293 (10th Cir. 2005)).

### B. Rule 60(c) Timeliness

Rule 60(c) requires Rule 60(b) motions to be brought "within a reasonable time." Fed. R. Civ. P. 60(c)(1). There is no explicit time limit applicable to motions under Rules 60(b)(5) and 60(b)(6). However, a party that delays filing a Rule 60(b) motion "must offer sufficient justification for the delay." *Myzer v. Bush*, 2018 U.S. App. 2018 WL 4368189 at *3 (10th Cir. Sept. 13, 2018) (unpublished) (quoting *Cummings v. Gen. Motors Corp.*, 365 F.3d 944, 955 (10th Cir. 2004)). Courts have consistently held that lengthy, unjustified delays constitute sufficient reason for denial of a Rule 60(b) motion. *See Thompson v. Workman*, 372 F. App'x 858, 861 (10th Cir. 2010) (unpublished) (unexplained eight-year delay in filing Rule 60(b) motion was not reasonable); *West v. Champion*, 363 F. App'x 660, 664–65 (10th Cir. 2010) (unpublished) (delay of more than eight years was not reasonable where movant provided the court with no justification for the delay); *United States v. Green*, 318 F. App'x 652, 654 (10th Cir. 2009) (unpublished) (delay of almost seven years made Rule 60(b)(6) motion untimely); *Sorbo v. UPS*, 432 F.3d 1169, 1177 (10th Cir. 2005) (upholding district court determination that "while [the Rule 60(b) motion] was not barred as a general matter by the strict one-year limit, plaintiff's objections based on information available prior to the grant of summary judgment were

not 'made within a reasonable time,' and, thus, were time-barred under this more flexible limitation").

III. ANALYSIS

A. Rule 60(b) Modification

Defendants do not argue that there has been a significant change in the law relating to this case. Rather, they assert that changed factual circumstances support vacatur or modification of the 2011 Order pursuant to Rule 60(b). I address each of their arguments in turn.

1. NMCD Grievance Procedure

Defendants first argue that there is no need for Plaintiff to have access to NMCD's grievance procedure, because prisoners housed out-of-state pursuant to the Interstate Compacts Act use the grievance procedure of the receiving state. *Doc. 163* at 6. In support of this proposition, Defendants cite *Garcia v. Lemaster*, 439 F.3d 1215, 1219–20 (10th Cir. 2006). Because both Virginia and New Mexico require inmates to file grievances with an employee who has first-hand knowledge, and Plaintiff is not housed in New Mexico, "only Virginia prison staff are sufficiently informed to respond to Plaintiff's informal grievance." *Doc. 163* at 8. Defendants also provide evidence that the Virginian Department of Corrections ("VDOC") grievance procedure is functionally equivalent to NMCD's and is constitutionally adequate. *Id*. at 7. They contend that the

7

2011 Postage Plan "imposes an onerous and unworkable burden that is detrimental to the public interest in efficient prison administration." *Id*. at 10.  Finally, they argue:

> Even if there were reasons to believe the Plaintiff needed access to NMCD's grievance procedure as of 2011, this is no longer true as of 2018 or for the foreseeable future.  As of 2018, VDOC has an inmate grievance policy that is essentially equivalent to NMCD's inmate grievance policy.

*Doc. 163* at 7.

What Defendants fail to provide is any assertion that there has been "a significant change in either factual conditions or in law." *Jackson*, 880 F.3d at 1194 (quoting *Rufo*, 502 U.S. at 384).  In arguing that the 2011 Postage Plan is not supported by law, they cite a Tenth Circuit case from 2006, demonstrating that the legal basis for their argument has *not* in fact changed since the time of the final judgment in 2011.  As to the described factual circumstances—namely, the adequacy of VDOC's grievance procedure and the futility of Plaintiff's attempting to file grievances with the NMCD—Defendants do not even specifically allege, let alone provide support for the notion, that either one is a *change* from 2011.

In short, Defendants fail to identify a change in factual conditions that has caused the 2011 Postage Plan to become onerous and unworkable.  Defendants similarly fail to explain how providing approximately three (3) stamps and envelopes per month is "detrimental to the public interest." *Doc. 163* at 10.  To be sure, the Supreme Court has recognized that "[w]hen a federal court orders that money be appropriated for one program, the effect is often to take funds away from other important programs." *Horne*,

8

557 U.S. at 448. This could surely be considered onerous and/or detrimental to the public interest. In *Horne*, the state was losing $2 million per day in fines as a result of failure to comply with the district court's order, and the state legislature passed a bill to implement a new funding scheme after accruing $20 million in fines. *Id*. at 442. *See also Jackson*, 880 F.3d at 1188 (state had already spent over $50 million on the litigation and was required to spend $135,535 per class member per year to comply). An order or consent decree may also be detrimental to the public interest for non-monetary reasons. *See, e.g., Rufo*, 502 U.S. at 384–85 (citing *Duran v. Elrod*, 760 F.2d 756, 759–61 (7th Cir. 1985)) (enforcement of decree was detrimental to the public interest where it would allow "pretrial release of accused violent felons").

The case before this Court, however, is not comparable. Defendants have failed to articulate either how the act of providing stamps and envelopes is onerous, unworkable, or detrimental to the public interest, or what specific factual conditions have changed in order to make it so. Even if NMCD, as Defendants claim, is "permanently at-risk of Court-imposed sanctions for failing to provide postage for Plaintiff to send grievances NMCD cannot possibly resolve," (*doc. 163* at 12), there is nothing to show that this circumstance is a change from 2011. Nor do Defendants meet the even "more difficult" standard of Rule 60(b)(6) by showing that it would "offend[] justice" to deny modification of the order. *Saggiani v. Strong*, 718 F. App'x at 712

9

(quoting *Zurich*, 426 F.3d at 1293). Defendants are therefore asking this Court to relitigate the case as it stood in 2011, which Rule 60(b) does not permit.

2. Access to Virginia Courts

Defendants next claim that Plaintiff has sufficient recourse to Virginia courts if Virginia prison officials violate his rights. *Id*. at 10. They point out that Virginia inmates are provided with free postage for their Virginia legal mail, and a court-appointed Virginia attorney to answer their legal questions. *Id*. at 10–11.

Once again, Defendants fail even to allege that this is a change from 2011. Not one of the cases cited in this part of Defendants' Motion postdates 2011. In fact, one of the cited opinions, *Trujillo v. Williams*, 465 F.3d 1210 (10th Cir. 2006), is an appeal from this very case which was not only available to Defendants in 2011, but surely known to the Court at the time of its order. Neither do Defendants suggest any change in factual conditions from 2011. For instance, they do not allege that, in 2011, inmates housed in Virginia did *not* have access to free postage for Virginia legal mail, or that inmates housed in Virginia did *not* have recourse to Virginia courts. Accordingly, there is no basis for a motion under Rule 60(b).

3. Alternative and More Effective Means

Next, Defendants argue that Plaintiff has other more effective means of accessing New Mexico legal authority. *Doc. 163* at 13. They propose the following alternatives:

(1) Plaintiff can submit a written request to Melissa Vandermark, Operations Manager at the facility ("Sussex II") where Plaintiff is currently incarcerated, who has agreed to email Plaintiff's requests to the New Mexico Supreme Court Law Library. *Id*. Defendants note that "as a last resort," Ms. Vandermark could also email NMCD's Office of General Counsel. *Id*. at 13–14. Defendants make it clear that "[t]his arrangement need not be contained in a Court order." *Id*. at 14.

(2) Plaintiff can make use of the weekly first-class letter provided by VDOC to indigent inmates. *Id*. at 14–15. Defendants also argue that, since Plaintiff's filings with this Court were mailed from his Virginia facility with envelopes and appropriate postage, VDOC's policy must evidently provide Plaintiff with "reasonable legal access." *Id*. at 15.

(3) Plaintiff can obtain assistance from the VDOC Interstate Compact Coordinator, who has "responsibility for managing, supervising, and coordinating the day-to-day administration of the Interstate Corrections Compact." *Id*. (quoting VDOC Compact for Interstate Transfer of Incarcerated Offenders Operating Procedure 020.3(III) (Definitions)).

Defendants acknowledge that Plaintiff has no access to New Mexico statutes and case law through the law library at Sussex II. *Id*. at 13. They also acknowledge that the available court-appointed Virginia attorney is not required to provide out-of-state legal

assistance to out-of-state inmates. *Id*. at 15. However, they argue that Plaintiff can obtain adequate legal assistance via the proposed methods.

The undersigned expresses no opinion as to the wisdom of these alternative methods, had they been proposed in 2011. But, again, Rule 60(b) does not require or permit this Court to relitigate the original issues of the case. Defendants once again fail to identify any change in factual conditions that would justify vacatur or modification of the 2011 Postage Plan. They state only the following: "If these means of access were not available to Plaintiff as of 2011, they are available as of 2018." *Id*. at 15–16. Notably, Defendants do not at any point claim that these means of access were *not* available in 2011, let alone identify at what point in time the change occurred.

Defendants argue that because these alternative means are available to ensure Plaintiff's legal access, there is "no need for the 2011 Postage Plan to remain in place" and it should be vacated. *Id*. at 16. Indeed, courts must sometimes consider whether the violation of federal law has been remedied when ruling on a Rule 60(b) motion. *See Horne*, 557 U.S. at 449–50 (courts must take a "flexible approach" to Rule 60(b) motions when addressing institutional reform decrees, which includes determining whether the order's objective has been achieved). However, the antecedent consideration is whether there has been a significant change in circumstances warranting relief. The Tenth Circuit's recent interpretation of *Horne* is instructive:

> As we read *Horne*, *if a party seeking modification to a consent decree demonstrates a significant change in circumstances*, the district court must take a flexible approach

and consider whether the moving party has implemented a durable remedy to cure the federal law violation underlying the institutional reform litigation.[2]

*Jackson*, 880 F.3d at 1200 (emphasis added). Similarly, "a court must determine *not only whether changed circumstances exist*, but *also* whether the 'objective' of the decree—that is, whether compliance with federal law—has been attained." *Id*. at 1201 (emphasis added). Because Defendants have failed to advance a theory of changed factual circumstances relative to 2011 in these alternative means of access, *Horne* does not require the Court to reach the question of whether the violation has been remedied.

As an additional note, it is highly questionable whether the main alternative means of access proposed by Defendants—namely, emails sent by Ms. Vandermark to the New Mexico Supreme Court Law Library—constitutes a "durable remedy." Defendants ask the Court to believe that, although NMCD admittedly has not complied with the 2011 court order, *see doc. 163* at 18 ("Former Director Roark…informed Plaintiff that no more postage-free envelops [sic] would be provided…"), an informal agreement with a current employee will be reliably honored. This arrangement appears particularly fragile in light of Defendants' subsequent argument that, due to personnel

---

[2] Whether the 2011 Postage Plan is properly considered an "institutional reform decree," *Horne*, 557 U.S. at 450, with all the attendant federalism concerns, *id*. at 448–49, remains an open question. The provision of several postage stamps and envelopes is certainly not of comparable scale to the orders in *Horne* or *Jackson* necessitating expenditure of millions of dollars and therefore "dictating state or local budget priorities." *Id*. at 448. For purposes of this PFRD, however, the undersigned assumes without deciding that the 2011 Postage Plan can be considered an institutional reform decree and should be treated similarly to the decrees in *Horne* and *Jackson*.

turnover, it is very difficult or impossible to keep new employees apprised of the court order applicable to Plaintiff. *See id*. at 18.

In sum, Defendants' proposed methods of providing legal access may or may not be preferable to the plan that they proposed in 2011. *See doc. 121*. In either case, the time to raise these alternate plans was seven years ago. Defendants have failed to allege either a change in factual circumstances warranting modification under Rule 60(b)(5), or the exceptional circumstances, offending justice, that would justify relief under Rule 60(b)(6).

4. <u>Indigency</u>

Without actually asserting that Plaintiff is no longer indigent, Defendants claim that it "might not be the case" that he is still indigent. *Doc. 163* at 16. The 2011 Postage Plan "implicitly presumed that Plaintiff is permanently indigent." *Id*. They therefore contend that "[i]f the 2011 Postage Plan is to be continued, it should at minimum be modified to require Plaintiff to continue to provide proof of indigency." *Id*.

Notwithstanding Plaintiff's assertion that "[i]ndigency has absolutely nothing to do with the issue at hand" (*doc. 167* at 6), there is at least some indication that Plaintiff's indigency was relevant to the Court's decision. The August 23, 2011 Order, directing Defendants to file a plan with the Court, adopted the Magistrate Judge's Report and Recommendations. *Doc. 120*. In the Report and Recommendations, the Magistrate Judge noted that Plaintiff was indigent and discussed the "proposition that indigent

inmates must be provided at state expense 'with the basic material necessary to draft legal documents and with stamps to mail them.'" *Doc. 105* at 7 (quoting *Bounds v. Smith*, 430 U.S. 817, 824 (1977)).  On the other hand, the 2011 Postage Plan does not contain any explicit language about indigency.  *See doc. 129*.

The undersigned need not decide whether proof that Plaintiff is no longer indigent might constitute changed factual circumstances justifying modification of the 2011 Postage Plan, because Defendants have not alleged, let alone provided evidence of, such a change.  They only speculate that Plaintiff "might" no longer be indigent, and urge the Court to modify the order requiring proof that he remains so.  But the original order includes no provision about Plaintiff's continuing indigency (*doc. 129*), and nothing has occurred in the interim to make the need for such a provision suddenly obvious.  The modification now proposed by Defendants could equally have been proposed at the time of the 2011 Postage Plan.  Because changed factual circumstances have not been shown, Defendants have not met the Rule 60(b)(5) standard.  Nor have they demonstrated that continued enforcement of the order offends justice sufficient to meet the very high standard of Rule 60(b)(6).

     5. <u>Personnel Turnover</u>

Lastly, Defendants argue that personnel turnover is a changed factual condition justifying vacatur or modification of the order.  *Doc. 163* at 17–18.  Defendants do not argue that this personnel turnover was unanticipated; indeed, they refer to it as "the

15

normal rate of staff turnover in State jobs" (*doc. 163* at 14) and "the routine turnover of personnel" (*id*. at 18).

There is no indication whatsoever that the rate of turnover has dramatically altered since 2011. To the extent that normal, routine personnel turnover is a changing factual condition, it should obviously have been anticipated by Defendants at the time of final judgment. *See Rufo*, 502 U.S. at 385 (movants who anticipated the changed conditions face a "heavy burden" under Rule 60(b)). Had Defendants wished to object, they could have done so in 2011. The described personnel turnover does not constitute grounds for modification under either Rule 60(b)(5) or 60(b)(6).

In sum, Defendants have failed to assert any significant change in circumstances that could support modification of the 2011 Postage Plan under Rule 60(b)(5). They have also failed to meet the more demanding Rule 60(b)(6) standard. In arguing that "Plaintiff fails to demonstrate an ongoing, permanent need for postage paid envelops [sic] to be supplied by NMCD" (*doc. 169* at 7), Defendants mischaracterize the applicable standard of review.[3] The burden is on the moving party to demonstrate changed circumstances, *Jackson*, 880 F.3d at 1194, which Defendants have failed to do. Plaintiff is correct in stating that Defendants "specify no change that may have occurred" and that they did not "raise any of these objections when they formulated

---

[3] Defendants also characterize Plaintiff as "exploiting" the 2011 Postage Plan. *Doc. 163* at 18. However, a party does not "exploit" a court order by attempting to enforce it.

this plan for the court." *Doc. 167* at 4. Accordingly, I recommend that the Court deny Defendants' Motion because it does not meet the Rule 60(b) standard for relief from a final judgment.

**B. Rule 60(c) Timeliness**

In the alternative, Defendants' Motion fails because it falls short of the Rule 60(c) timeliness standard. A Rule 60(b) motion can properly be denied because of an unreasonable delay in filing. *See Jackson*, 880 F.3d at 1205 n.8 ("Of course, on remand, the district court is free to perform a Rule 60(c)(1) timeliness analysis and conclude that…Defendants did not seek relief 'within a reasonable time' of the change in circumstances on which they rely."). In this case, not only have Defendants failed to identify a change in circumstances, but they have also entirely failed to specify *when* such changes would have occurred, or why this Motion was not filed sooner. More than seven years have passed since the filing of the Order Adopting Postage Plan on September 30, 2011. *Doc. 129*. Defendants have provided no justification for their delay in filing these objections. Unjustified delays of approximately this length, or even less, have repeatedly been held unreasonable under Rule 60(c). *See Thompson*, 372 F. App'x at 861; *West*, 363 F. App'x at 664–65; *Green*, 318 F. App'x at 654; *Sorbo*, 432 F.3d at 1177. This delay is even more egregious given the fact that Defendants had unilaterally ceased complying with the court's order no later than mid-2016. *See supra* at 3, n.1.

Therefore, the undersigned recommends finding that, even if Defendants' arguments were meritorious, they are not timely filed.

IV.  **CONCLUSION**

For the foregoing reasons, I recommend that the Court DENY Defendants' Motion to Vacate or Modify September 30, 2011 Postage Plan Order.  *Doc. 163*.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**