# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

JESSE TRUJILLO,

    Plaintiff,

v.                                                        No. CIV 04-635-MV-GBW

JOE WILLIAMS, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on pro se Plaintiff's Motion to Impose Civil Contempt Sanctions [Doc. 154]. The Court, having considered the motion, briefs, and relevant law, and being otherwise fully informed, finds that the Motion is well-taken and will be granted.

## BACKGROUND

The facts of this case have been repeatedly recited, most recently in this Court's Order of January 22, 2018. Doc. 174. The Court here reviews only the facts relevant to the instant Motion.

In a Memorandum Opinion and Order entered on August 3, 2011, this Court adopted the Report and Recommendations of the Magistrate Judge in finding that Plaintiff Jesse Trujillo, a New Mexico prisoner housed in Virginia, was being denied legal access. Doc. 120. The Court consequently ordered Defendants to "file with the Court a plan that will enable Plaintiff to send legal requests and grievances to the NMCD [("New Mexico Corrections Department")] at no expense to himself." *Id*. at 5. Defendants complied, filing a Plan to Allow Postage Free Legal Request by Plaintiff to NMCD. Doc. 121. In its Plan, Defendants proposed that (1) NMCD would initially provide Plaintiff with three standard pre-stamped envelopes and that, thereafter, (2) NMCD would enclose a pre-stamped envelope in any response or reply sent to Plaintiff. *See id*.

at 1. The Court adopted Defendants' proposed plan in its September 30, 2011 Order Adopting Postage Plan ("Postage Plan Order"). Doc. 129. The Court also entered its Final Judgment. Doc. 130.

Approximately five years later, on August 4, 2016, Plaintiff moved to reopen the case and find Defendants in contempt due to their failure to comply with the Postage Plan Order. Doc. 147. In a Memorandum Opinion and Order entered on February 12, 2018 ("Contempt Order"), the Court declined to reopen the case, but granted Plaintiff's motion as it pertained to enforcement of the Postage Plan Order, holding as follows:

> In this case, Plaintiff Trujillo's Motion and the Court record establish the existence of the Court's September 30, 2011 Order, that Defendants have knowledge of that Order, and that Defendants have ceased to comply with the Order. Defendants do not contend that they have continued to comply with the Order or could not comply but, instead, seek to have the Court relieve them of further obligation to comply. The Court finds that Defendants have not complied with the Court's September 30, 2011 Order and will impose a civil-contempt sanction.

Doc. 153 at 5 (internal citations omitted). The Court held Defendants in contempt for their failure to comply with the Postage Plan Order, indicated that Defendants could "purge the contempt by continuing to comply with the [Postage Plan Order]," and "**DIRECTED** [Defendants] to continue to comply with the postage plan adopted by this Court's September 30, 2011 Order." *Id.* at 5, 6. The Court further directed that, if Defendants wished "to be relieved of the obligation to comply with the [Postage Plan Order], they were required to file a motion made in compliance with the requirements of Rule 60(b)." *Id.* at 6.

On May 25, 2018, Plaintiff filed his instant motion, requesting that the Court impose civil contempt sanctions on Defendants for their continued failure to comply with the Postage Plan Order ("Motion for Sanctions"). Doc. 154. In his motion, Plaintiff states that "nearly 3 months have passed since this Court issued the [Contempt] Order and the Defendants have made

2

absolutely no effort to comply, by providing Plaintiff postage free envelopes for him to file grievances in New Mexico." *Id.* Plaintiff requests that this Court impose civil contempt sanctions against Defendants and order that Defendants return Plaintiff to New Mexico. *Id.*

Defendants failed to timely respond to Plaintiff's Motion for Sanctions, and on August 1, 2018, Magistrate Judge Gregory B. Wormuth entered an Order to Respond, ordering that Defendants respond to Plaintiff's Motion for Sanctions no later than August 14, 2018. Doc. 155. On August 23, 2018, Defendants filed a motion for an extension of time in which to respond to Plaintiff's Motion for Sanctions, stating that they did not have notice of Plaintiff's Motion for Sanctions or the Order to Respond until August 23, 2018. Doc. 157. On August 24, 2018, Judge Wormuth granted Defendants' motion for an extension, and set a deadline of September 4, 2018 for Defendants' response. Doc. 158. Defendants filed their response on September 4, 2018, in which they object to Plaintiff's request for sanctions. Doc. 160.

Thereafter, on October 3, 2018, Defendants filed a motion to vacate the Postage Plan Order, pursuant to Rule 60 of the Federal Rules of Civil Procedure. Doc. 163. Plaintiff filed a Response arguing against modification of the Postage Plan Order, Doc. 167, and Defendants filed a Reply. Doc. 169. Pursuant to this Court's Order of Reference, Judge Wormuth filed his Proposed Findings and Recommended Disposition ("PFRD") on November 27, 2018, recommending that Defendants' motion be denied. Doc. 171. Defendants filed objections to the PFRD on December 11, 2018. Doc. 173. In a Memorandum Opinion and Order dated January 22, 2019 ("Order Denying Motion to Vacate"), this Court overruled Defendants' objections and adopted the PFRD. Doc. 174. In the Order Denying Motion to Vacate, the Court found that Defendants failed to meet the standard under Rule 60(b) for several reasons, including the fact that Defendants "exhibited an exceptional lack of attempting to comply with the Postage Plan Order." *Id.* at 11. Specifically,

"[r]ather than filing their Motion for relief immediately upon determining that compliance was too arduous, Defendants elected to ignore and defy the Court's Order. As a result, Defendants have been non-compliant since at least 2016." *Id.*

With this background, the Court now must determine the merits of Plaintiff's request that the Court impose civil contempt sanctions on Defendants for their failure to comply with the postage plan adopted in the Postage Plan Order and reaffirmed in the Contempt Order.

## STANDARD

"A district court may exercise broad discretion in using its contempt power to assure compliance with its orders." *Rodriguez v. IBP, Inc.*, 243 F.3d 1221, 1231 (10th Cir. 2001). Civil contempt "is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance." *Law v. Nat'l Collegiate Athletic Ass'n ("Law I")*, 134 F.3d 1438, 1442 (10th Cir. 1998) (citations omitted). Accordingly, sanctions may be employed in civil contempt proceedings "for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Id.* (citation omitted). If the purpose is compensatory, "a fine is imposed, payable to the complainant." *Id.* (citation omitted). "Such fine must of course be based upon evidence of complainant's actual loss." *Id.* (citation omitted). "The offending party is punished, but a critical feature of civil contempt is that "the punishment is remedial." *Id.* at 1443 (citation omitted). Fines may also be imposed if the purpose of the sanction is coercive, "as long as the offending party can avoid them by complying with the court's order." *Id.*; *In re Lucre Mgm't Group, LLC*, 365 F.3d 874, 876 (10th Cir. 2004) ("In civil contempt, the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus carries the keys of his prison in his own pocket.") (citation omitted); *see also Law v. Nat'l Collegiate*

*Athletic Ass'n ("Law II")*, 134 F.3d 1025, 1030 (1998) ("As to the daily fines from May 4 until our stay order of May 7, the NCAA had the opportunity to avoid the sanctions by paying the attorneys' fee awards; thus this portion was coercive and civil.").

A plaintiff requesting civil contempt sanctions must demonstrate "by clear and convincing evidence that a valid court order existed, that [the defendant] had knowledge of the order, and that [the defendant] disobeyed the order." *ClearOne Commc'ns, Inc. v. Bowers*, 651 F.3d 1200, 1210 (10th Cir. 2011). Once the plaintiff makes that showing, the defendant must "show either that [it] complied with the order or that [it] could not comply with it." *Id.* In determining whether civil contempt sanctions are warranted, neither the validity of the underlying order nor the noncomplying party's "good faith" enters into the equation; rather, "the question is whether the alleged contemnor complied with the court's order." *Cottriel v. Jones*, 588 F. App'x 753, 757 (10th Cir. 2014) (quoting *Chao v. Transocean Offshore, Inc.*, 276 F.3d 725, 728 (5th Cir. 2002)). Accordingly, the noncomplying party's "belief that the [underlying] order was invalid does not excuse [it] from compliance." *Rodriguez*, 243 F.3d at 1231.

## DISCUSSION

In the instant case, Plaintiff requests that the Court impose civil contempt sanctions on Defendants for their continued failure to comply with the Postage Plan Order. Plaintiff represents, and Defendants do not contest, that, despite the Contempt Order specifically directing them to comply with the Postage Plan Order, Defendants have failed to provide him with postage-free envelopes, as directed by the Postage Plan Order. Plaintiff's motion and the Court record establish by clear and convincing evidence the existence of both the Contempt Order and the Postage Plan Order, which are valid orders of this Court, that Defendants had knowledge of the Contempt Order and the Postage Plan Order, which were entered on the docket, and that

Defendants have disobeyed both the Contempt Order and the Postage Plan Order, namely, by continuing to refuse to provide Plaintiff postage-free envelopes for him to file grievances in New Mexico. *See* Doc. 160 at 7, 13 (Defendants admit that: former Director Roark "informed Plaintiff that no more postage-free envelops [*sic*] would be provided;" that it was individuals other than the named Defendants Joe Williams and Elmer Bustos who "violated the [Postage Plan Order]"; and admitting that "[p]rison officials took the sensible approach of informing Plaintiff that his recourse is to [Virginia Department of Corrections ("VDOC")]". In the face of this clear and convincing evidence, Defendants have not established, as they must, that they have complied with either the Contempt Order or the Postage Plan Order, or that they could not comply with either Order.

Nonetheless, Defendants argue that Plaintiff's request for sanctions is "not well-founded." Doc. 160 at 12. In support of their argument, Defendants claim that "Plaintiff appears to have misrepresented his situation in several important respects and appears to be attempting to take unfair advantage of misplaced concern about lack of legal access." *Id.* In turn, Defendants base this claim on their contentions that "there is a very real possibility that Plaintiff is not even indigent," "Plaintiff surely is aware that he has recourse to the VDOC grievance procedure," and "neither of the named Defendants (Joe Williams and Elmer Bustos) personally violated the [Postage Plan] Order." *Id.* at 12-14. As an initial matter, in his Motion for Sanctions, Plaintiff represents only that Defendants have made no effort to comply with either the Contempt Order or the Postage Plan Order. This representation is accurate. As the Court found in the Order Denying Motion to Vacate, Defendants have "exhibited an exceptional lack of attempting to comply with the Postage Plan Order," have "elected to ignore and defy the Court's Order," and "have been non-compliant since at least 2016." Doc. 173 at 11. Plaintiff's Motion for Sanctions

6

thus contains no misrepresentations regarding "his situation." Further, contrary to Defendants' claims, the Postage Plan Order did not turn on Plaintiff's indigency, Plaintiff's access to the VDOC grievance procedure is irrelevant to his access to NMCD, and the Postage Plan Order directed *NMCD* – as opposed to Williams, Bustos, or any other individual – to provide Plaintiff with postage-paid envelopes. Most importantly, none of Defendants' contentions excuses Defendants' failure to comply with the Contempt Order or the Postage Plan Order.

Essentially, Defendants appear to argue that the burden placed on them by the Postage Plan Order and reinforced by the Contempt Order is unwarranted, because NMCD has no authority to address Plaintiff's grievances, and thus sending Plaintiff stamped envelopes addressed to NMCD will "remedy[] no actual wrong and serv[e] no substantive purpose." Doc. 160 at 14. This argument goes directly to the validity of the underlying orders. Under controlling Tenth Circuit precedent, however, Defendants' belief that the Contempt Order and the Postage Plan Order are invalid "does not excuse them from compliance." *Rodriguez*, 243 F.3d at 1231.

The only question before this Court is whether Defendants complied with the Court's Orders. The unequivocal answer is no. Accordingly, this Court is well within its broad discretion in using its contempt power to coerce Defendants' compliance with the Contempt Order and Postage Plan Order and to compensate Plaintiff for any losses that he sustained by reason of Defendants' noncompliance with those Orders. *Law I*, 134 F.3d at 1442; *Rodriguez*, 243 F.3d at 1231; *see also Law II*, 134 F.3d at 1031 (noting that if it were to set aside civil

sanctions ordered by district court, appellate court "would undermine the district court's authority to apply coercive sanctions to enforce its proper orders").

In considering an appropriate sanction, the Court is mindful that Defendants not only violated the Postage Plan Order but, despite being held in contempt by this Court in February 2018, have continued to violate the Postage Plan Order. In the Contempt Order, the Court held Defendants in contempt but did not impose any fines or other sanction. The Court indicated that Defendants could purge the contempt by complying with the Postage Plan Order. Defendants failed to so comply. The Contempt Order also *directed* Defendants to comply with the postage plan adopted in the Postage Plan Order. Defendants failed to follow this directive, and thus are now in contempt not only of the Postage Plan Order, but also the Contempt Order. Defendants thus have "eschewed all opportunities to avoid [a] sanction." *Rodriguez*, 243 F.3d at 1231. Further, because of Defendants' noncompliance, Plaintiff lost the opportunity to file grievances with NMCD since at least August 2016, when Plaintiff first moved the Court to reopen his case and sanction Defendants.

Under these circumstances, in order to effectively compensate Plaintiff for his losses and coerce Defendants' compliance, the Court will order Defendants to provide Plaintiff with 200 forever stamps and 200 blank envelopes no later than May 20, 2019. If Defendants fail to comply with this directive, Defendants shall be required not only to provide Plaintiff with 200 forever stamps and 200 blank envelopes, but also to pay a fine of $1,000 to Plaintiff. *See Law*, 134 F.3d at 1030 (upholding as proper, coercive civil contempt sanction district court's imposition of daily fines of $5,000 on the NCAA, payable to plaintiffs, increasing to $10,000 daily, if attorney fees that had been ordered by court were not paid in full by certain date); *Rodriguez*, 243 F.3d at 1231 (holding that district court did not abuse its discretion in sanctioning

Rodriguez for "his continued failure to comply with its order to provide a signed release of his Social Security records," where sanction imposed by court was reduction in amount of $411,000 judgment he had been awarded after a jury trial by ten percent for each business day that he did not comply with order to provide release, resulting in judgment being reduced to zero); *Lucre Mgm't*, 365 F.3d at 876 (upholding civil contempt order that required Lucre to pay receiver amount due on or before a certain date, failing which the amount due, plus a $1,000 sanction, would become the judgment of the court).

The Court acknowledges that Plaintiff has requested that the Court order that he be returned to New Mexico. It is not within the Court's discretion to grant this request.

## CONCLUSION

Because Defendants have failed to comply with the postage plan adopted in the Postage Plan Order and reaffirmed in the Contempt Order, Defendants are in contempt of the Court's Postage Plan Order and Contempt Order. To compensate Plaintiff for his losses and coerce Defendants' compliance, the Court finds it necessary and proper to impose civil contempt sanctions on Defendants.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Impose Civil Contempt Sanctions [Doc. 154] is **GRANTED** as follows:

(1) Defendants shall provide Plaintiff with 200 forever stamps and 200 blank envelopes no later than May 20, 2019. No later than May 20, 2019, Defendants shall file on the docket notice that they have complied with this obligation. If no such notice is filed by that date, the Court shall enter an order directing Defendants to provide Plaintiff with 200 forever stamps and 200 blank envelopes and to pay a fine of $1,000 to Plaintiff.

(2) Defendants are directed to comply with the postage plan adopted in the Postage Plan Order.

(3) Defendants are directed to update the Court's electronic service list as necessary to ensure that they receive electronic filings in this matter.

DATED this 18th day of April 2019.

_____
MARTHA VAZQUEZ
United States District Judge